**PORTER, Price Administrator, v. ROYAL PACKING CO.**

No. 13354.

Circuit Court of Appeals, Eighth Circuit.

Oct. 24, 1946.

Rehearing Denied Nov. 21, 1946.

Nathan Siegel, Sp. Appellate Atty., Office of Price Administration, of New York City (George Moncharsh, Deputy Administrator for Enforcement, David London, Director, Litigation Division, Albert M. Dreyer, Chief, Appellate Branch, and Robert Proctor, Regional Litigation Atty., all of Washington, D. C., and George L. Robertson, Dist. Enforcement Atty., and James D. Dockery, Dist. Litigation Atty., both of St. Louis, Mo., on the brief), for appellant.

Lloyd E. Boas, of St. Louis, Mo. (Thomas R. Taylor, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought by the Price Administrator of the Office of Price Administration under Section 205(a) and (b) of the Emergency Price Control Act[1] against defendant packing corporation engaged in slaughtering and wholesaling meat in St. Louis, Missouri, in Price Zone 5, for injunction and statutory damages on account of alleged violations of Revised Maximum Price Regulation No. 169, by charging in excess of maximum prices in described sales of beef and veal carcasses and wholesale cuts in eastern markets outside Price Zone 5, between January and July, 1944. The defendant admitted that it had through innocent mistakes made such overcharges amounting to $185.37 in certain of the sales but denied further violations or liability, and there was a trial to the court without a jury upon the rest of the Administrator's claim of excessive prices charged aggregating $6,928.18 and for injunction. The court awarded judgment against defendant for the amount confessed without increased damages, but found for defendant on all the contested issues and dismissed that part of plaintiff's action. The Administrator appeals from the judgment adverse to him.

The sales of defendant alleged to be violative of the Act were made by defendant to "hotel supply houses" (which were not purveyors of meals) in New York, Philadelphia and Boston, located in a price

[1] 50 U.S.C.A.Appendix, §§ 901 et seq., 925(a, b).

zone other than Price Zone 5, and it appears without dispute that the prices charged and collected by defendant were twenty-five cents per hundred weight higher than the maximum prices permitted by the applicable regulations to be charged by slaughterers in Price Zone 5 to purchasers located in the other zone for the carcasses and wholesale cuts and delivery thereof by rail from the slaughterer's distribution point to the purchaser. But it also appears that the slaughtering plant of defendant is located some five miles from the railroad loading dock to which defendant trucked the meat in question and defendant sought to justify its addition of twenty-five cents per hundred weight to the maximum prices on the ground that the cost to it of trucking the meat in its own trucks over the five miles from its slaughtering plant to the railroad loading dock amounted to that sum approximately. Although the twenty-five cent charge does not appear as an item on any of the invoices of the goods which defendant produced from its own files in response to plaintiff's subpoena and which plaintiff offered in evidence, defendant's witness testified over plaintiff's objection that a rubber stamp impression had been made on each of the invoices sent to the customers reading: "Above price includes twenty five cents per hundred weight transportation charge allowed by OPA."

It appears that prior to the sales in question the defendant had disposed of its product locally in the usual course of its business and had not sold it to purchasers in eastern markets, and it is apparent that the plant of the defendant (five miles from the railroad loading dock) is not in the same position to serve the eastern markets as the St. Louis packing houses which have railroad sidings and loading docks on their own premises. Equalizing the positions by adding trucking charges to sales prices would obviously tend to divert business from usual regulated channels. The amount of meat included in the challenged sales is 2,697,126 pounds.

But defendant's contentions are (1) that the regulations should be construed to mean that it was permitted to make the twenty-five cents addition to maximum prices which it made, or (2) that the regulations are so ambiguous on the point that defendant should not be held for violation, and (3) that in any event agents of the Administrator informed the defendant that the regulations permitted it to make the addition to its sale price and that such information was justifiably relied on and believed by defendant as the interpretation of the Administrator. There is and can be no dispute on the record that if defendant's plant had been provided with railroad loading dock on the premises the amounts charged on the sales would have been in excess of the permitted prices in the amounts claimed by plaintiff.

The regulations disclose that the maximum selling prices prescribed therein for slaughterers are made to depend upon the zones in which slaughtering is done, and that transportation allowances to purchasers in other zones are to be added to the base price at the slaughterer's "distribution point." That point is defined in the regulations: "Definitions applicable to beef. * * * (5). Distribution point includes a packing or slaughtering plant, packer's branch house, wholesaler's or jobber's or hotel supply house's warehouse, car route unloading station." Section 1364.455(a) RMPR 169.

Upon reading the definition in its context we can discern no reason to doubt that defendant's packing or slaughtering plant in St. Louis was its distribution point from the location of which the maximum price had to be fixed for the sales in question. That is the point from which defendant distributed its product generally and is the only point which it is shown to have had for making distribution, and that is the distribution point specifically included in the definition.

Defendant contended in the trial court and has argued here that the railroad loading dock at which it loaded the goods for transportation by rail to the eastern purchasers ought to be deemed its distribution point. It stressed that the regulations in the section referred to did not say "Distribution point" *means* such and such, but that "Distribution point" *includes* such and such, and it argues that there was no de-

fining of distribution point applicable to a slaughterer like itself remote from railroad loading docks, and that the regulations therefore left open to defendant to believe that the railroad loading dock was the "distribution point" to be used by it in computing the maximum sales prices and that it could add its own estimate of cost to its zone maximum price on account of its trucking to the railroad loading dock. We are not persuaded by the argument. We think that the Administrator's use of the heading "Definition" and statement under that heading of the places included in "Distribution point" wherever that point is referred to in the regulations, fairly apprises the reader that the slaughterer was required to limit its prices on such sales as are in question to its zone price at its slaughtering plant as its distribution point, and that a fair reading of the language does not permit attributing to "Distribution point" the meaning contended for by defendant. Definition of words may be made as well by statement of what is included within their ambit as by identification or exclusion. And in the context of the regulations the definition of "Distribution point" appears to be without ambiguity and a sufficient definition. Counsel for the Administrator has pointed out that other provisions of the regulations and the considerations accompanying their issuance coincide with the intention which we have found to be conveyed by a fair reading of the language. Thus in Section 1364.451(a) (3) (iii) (b) defendant's applicable zone price is fixed as "the price for the zone in which is located its distribution point *from which* the meat consigned to the buyer is delivered to a railroad for shipment at the car load rate to the buyer who pays the shipping charges to the carrier." In this case the meat in question was consigned to the buyers and delivered to a railroad for shipment at the car load rate to the buyer who paid the shipping charges to the carrier. The language of the section precludes identification of the railroad loading point with the "distribution point" *from* which the meat was delivered to the railroad for shipment. Manifestly the distribution point and the railroad loading points are different points. Also in the Considerations it is said: "In recognition of the structure of the industry the general criterion for determining the zone price applicable to a particular transaction is the point of distribution. Normally this means the point at which the wholesale distribution is effected to the retailers or other customers in the market area. Since many packing plants also perform this local selling function it was necessary to include them among the distribution points, and it was deemed desirable that sellers otherwise unable to procure meat should be permitted to accept delivery at the packing plant." Also the Administrator's interpretations in evidence appear to have consistently declared that a railroad loading point is not a distribution point in the absence of express exception. Thus in an official interpretation issued to all field offices on July 24, 1944, it was said, i. a.: "Section 1364.455(a) (5) defines Distribution Point to include both packing plants and railroad unloading stations and railroad loading stations cannot be considered distribution points." Another interpretation of January 8, 1945, says in part: "We can find no basis upon which[2] [a slaughterer like defendant remote from railroad loading dock] may predicate a transportation charge for delivery of meats from the slaughter plant to the railroad siding."

■ We do not find in the record any expression of the Administrator or his agents which appears to us to attribute any other meaning to "distribution point" as used in this regulation than the meaning we have found it to convey upon a fair reading of the language of the regulations. We conclude that the trial court was in error in its finding and conclusion as to the meaning of distribution point in the regulations, and as the interpretation is a question of law the judgment of dismissal must be avoided. Upon our interpretation of the regulations the violations charged were clearly established by the evidence and as there was no substantial evidence to the contrary the Administrator became entitled to judgment for the amount of the excess charges on the sales.

---

[2] Interpolated to connect the text.

The trial court made specific findings of fact against the Administrator in respect to his demand for treble damages to the effect that the packing company at all times made diligent and positive efforts to comply strictly with the regulations ·and acted in good faith in making the charges in the sales complained of. On this appeal, in addition to the question we have discussed as to the meaning of the regulation, the question has also been argued on both sides and fully considered whether communications which passed between the Local Price Department and the packing company amounted to interpretation, advice or instruction justifying the packing company in making the charges complained of. Though the Administrator has contended that they did not (and we so hold), he has not directly assailed the trial court's findings of diligence, positive efforts to comply and good faith on the part of the company, and our study of the record has not persuaded that these parts of the findings were made without any substantial support in the evidence or that there was abuse of the trial court's discretion in its conclusion that the company was not liable for multiple damages. The dismissal of the treble damage claim is therefore sustained.

Reversed with direction to set aside the judgment of dismissal and to enter judgment for plaintiff for the amount of the excess charges in accordance with this opinion.